# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ANGELITA KERCADO-CLYMER,

                 Plaintiff,

v.                                  6:07-CV-00086 (NPM/DEP)

CITY OF AMSTERDAM,
THOMAS V.N. BROWNELL,
As Chief of Police of the City of
Amsterdam, and in his Individual
Capacity,

                 Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF JAMES B. TUTTLE<br>Attorney for Plaintiff<br>10 Century Hill Drive, Suite 4<br>Latham, New York  12110 | JAMES B. TUTTLE, ESQ. |
| GIRVIN & FERLAZZO, PC<br>Attorneys for Defendant<br>City of Amsterdam<br>20 Corporate Woods Boulevard<br>Albany, NY  12211-2350 | JACINDA HALL CONBOY, ESQ.<br>SCOTT P. QUESNEL, ESQ. |
| LEMIRE JOHNSON, LLC<br>Attorney for Defendant<br>City of Amsterdam<br>2534 Route 9, P.O. Box 2485<br>Malta, NY   12020 | GREGG T. JOHNSON, ESQ. |
| PENNOCK, BREEDLOVE & NOLL, LLP<br>Attorneys for Defendant<br>Thomas V.N. Brownell<br>1407 Route 9, Nine North<br>Clifton Park, NY  12065 | JOHN H. PENNOCK, ESQ.<br>TRACY M. LAROCQUE, ESQ. |

**NEAL P. McCURN, Senior U.S. District Court Judge**

<u>**MEMORANDUM - DECISION AND ORDER**</u>

Plaintiff Angelita Kercado-Clymer ("plaintiff"), a police officer with the City of Amsterdam Police Department, brings this employment discrimination action against the City of Amsterdam ("City") and Police Chief Thomas V.N. Brownell ("Brownell") pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"). Plaintiff also seeks relief and/or damages from both defendants for violation of her rights to procedural due process, substantive due process, freedom of speech, freedom of religion, and freedom of association under the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff seeks state relief under the New York State Human Rights Law ("NYHRL"), codified at § 290 <u>et seq</u>.

In her five-count complaint, plaintiff alleges employment discrimination on the basis of gender, national origin, and religion, and complains specifically of hostile work environment. Plaintiff also alleges retaliation by Brownell against plaintiff for complaining about his discriminatory conduct.

Plaintiff alleges that the City failed to respond to her complaints and by failing to take action against Brownell for his alleged offensive and discriminatory conduct, "the City condoned and/or acquiesced in said conduct, thereby establishing

a <u>de</u> <u>facto</u> unconstitutional municipal pattern, practice or policy in derogation of the plaintiff's civil rights" (<u>Id.</u> at ¶ 36), pursuant to the <u>Monell</u> principles outlined and discussed in detail below.

The court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Currently before the court are motions by Brownell (Doc. No. 33) and by the City (Doc. No. 34) for summary judgment pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 56 (Doc. No. 33).  In the interest of judicial economy, these motions will be decided together.  For the reasons set forth below, the defendants' motions will be granted in part and denied in part.

I.     **FACTS**

The court takes the following facts from the complaint, pleadings, affidavits, discovery and disclosure materials on file, resolving all ambiguities and drawing all permissible factual inferences in favor of the plaintiff, against whom summary judgment is sought.  Plaintiff is of Puerto Rican national origin, and was, for a portion of the time relevant to the case at bar, "married to a black minister." Doc. No. 1 at ¶ 9.  Plaintiff is currently employed by and was at all times relevant to this action employed by the City of Amsterdam Police Department.  At the time her complaint was filed on January 23, 2007, plaintiff was the only female police officer in that department.  <u>Id.</u>

Defendant City is currently and was at all times relevant to this action a city organized and existing under the constitution and statutes of the State of New York, with its principal place of business at 61 Church Street, Amsterdam, New York. Defendant Brownell is currently and was at all times relevant to this action the Chief of Police of the City of Amsterdam Police Department.

Plaintiff alleges that from the beginning of her employment in 1994, Brownell made it a regular practice to make sexually offensive, racially offensive, and religiously offensive comments to her, first in his capacity as police sergeant, then upon his promotion in 1996, in his capacity as police chief.  Plaintiff alleges that she complained about Brownell's offensive conduct toward her to representatives of the department's administration, but nothing was ever done about it.

Plaintiff also alleges that upon Brownell's promotion to police chief, he used his position of authority to retaliate against plaintiff for the complaints she made and continued to make about his conduct.  Plaintiff alleges that Brownell's offensive conduct and retaliation against her have been continual since approximately 1995. Id. at ¶ 13.  From February 2004 to the present time, Brownell is alleged to have made numerous remarks to the plaintiff that were sexually, racially and religiously derogative and offensive. Id. at ¶ 14.  Plaintiff alleges

4

specific examples of offensive conduct, which the court will address in detail, infra.

During that same time frame, plaintiff alleges that Brownell treated her less fairly than he treated the male employees in the department in terms of training, discipline, and allowing overtime.  Specifically, plaintiff describes an incident where, in responding to an emergency call, she drove the wrong way on a one-way street (an action permitted under New York Vehicle and Traffic Law[1] under certain circumstances and allegedly condoned by Brownell for male police officers of the department).[2]  Plaintiff received a counseling memorandum for the act, but after she filed a discrimination complaint against Brownell with the City, disciplinary charges were filed against her.  For this alleged vehicle and traffic infraction, the plaintiff was required to forfeit a substantial amount of accrued vacation time.

Brownell also disciplined a male police officer who wrote a letter to the editor of a local newspaper after a disparaging news article, quoting Brownell extensively, appeared after plaintiff filed the instant lawsuit.  Both plaintiff and the

---

[1]       Section 1104 of New York Vehicle & Traffic Law states in pertinent part that "(a) The driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges in this section, but subject to the conditions herein stated.  (b) The driver of an authorized emergency vehicle may: ... 4. Disregard regulations governing direction of movement or turning in specified directions ... (e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons ...." McKinney's Vehicle and Traffic Law § 1104 (West 2009).

[2]       Plaintiff alleges she was the only officer disciplined for driving the wrong way down a one-way street while responding to an emergency situation, despite male officers having "done the same thing and not been disciplined for it." Doc. No. 40 at p. 6.

male officer were disciplined by Brownell by being denied the privilege of working the desk on weekdays when Brownell was present.

Plaintiff avers that she sent a memo detailing her complaints to Brownell and the City administration in October of 2005.  Brownell responded that he had investigated[3] and found no merit to her complaints.  Plaintiff asserts that the City never responded to her complaint. Id. at ¶ 17.  Plaintiff wrote another letter of complaint to the City on January 27, 2006.  As of the day she filed the current action, plaintiff had received no response.  Id.

## II.  DISCUSSION

Brownell moves for summary judgment based on his contention that (1) plaintiff cannot maintain a Title VII claim against him individually as a matter of law; (2) plaintiff's NY Executive Law § 296 and 42 U.S.C. § 1983 discrimination claims fail under a hostile work environment theory because the claims do not establish [any] severe or pervasive discriminatory behavior that interfered with plaintiff's work performance; (3)  plaintiff's NY Executive Law § 296 and 42 U.S.C. § 1983 discrimination claims fail under a disparate treatment theory because plaintiff was not subjected to any adverse employment actions; (4) even if the court

---

[3]     Brownell assigned the investigation to plaintiff's brother and fellow officer, Lt. Al Kercado.

reads plaintiff's complaint broadly enough to find a claim of retaliation either under NY Executive Law § 296 and 42 U.S.C. § 1983 discrimination, the claim fails because plaintiff was not subjected to any adverse employment actions as a result of engaging in "protected" speech; and (5) Brownell is entitled to qualified immunity. (Doc. No. 33 at pp. 1-2).

The City moves this court for summary judgment on the grounds that (1) plaintiff's Title VII claims and NYHRL claims are barred by the applicable statute of limitations and are otherwise fatally deficient; (2) plaintiff's harassment claims are precluded by her admitted failure to utilize the City's complaint procedure; (3) plaintiff's claims of retaliation and retaliatory hostile work environment must be dismissed for failure to establish a prima facie case for retaliation; and (4) the plaintiff's complaint fails to state constitutional violation claims upon which relief can be granted. Doc. No. 34 at p.1.

### A.   Legal Standards

#### 1.   Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2009). See also Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]"  Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

### 2.   42 U.S.C.A. § 1983 Generally

Plaintiff alleges discrimination and retaliation claims against the defendants.

Specifically, plaintiff alleges that she was deprived of her right to freedom of speech, freedom of religion, and freedom of association in violation of the First Amendment to the United States Constitution, and deprived of her right to procedural and substantive due process, and equal protection under the law in violation of the Fourteenth Amendment to the Constitution.

In order to prevail on a claim under 42 U.S.C.A. § 1983 , a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2009).

"[S]ex-based discrimination may be actionable under § 1983 as a violation of equal protection ... Accordingly, § 1983 and the Equal Protection Clause protect

9

public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir.2006).  In the case at bar, plaintiff has alleged that Brownell, under color of state law, discriminated against her by creating a hostile work environment.  " Hostile work environment claims - unlike Title VII claims ... are cognizable against individuals under section 1983 ...  Indeed, a hostile work environment claim brought under section 1983 is analyzed using 'Title VII law.'" Cruz v. Liberatore, 582 F.Supp.2d 508, 516 (S.D.N.Y. 2008) (citing Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir.1996)).  In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### 3.      Title VII of the Civil Rights Act of 1964

Title VII states in pertinent part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e-2(a)(1) (West 2009). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,

Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct.

367, 126 L.Ed.2d 295 (1993) (internal citations and quotations omitted). "In

determining whether a work environment is sufficiently hostile or abusive to violate

Title VII, we look at all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." Holtz v. Rockefeller & Co., Inc., 258 F.3d

62, 75 (2d Cir.2001). "Simple teasing, offhand comments, and isolated incidents

(unless extremely serious) will not amount to discriminatory changes in the terms

and conditions of employment ... The incidents of allegedly offensive conduct must

also be more than episodic; they must be sufficiently continuous and concerted in

order to be deemed pervasive." Id. (internal citations and quotations omitted).

The seminal case law on liability of the employer is the so-called

Faragher/Ellerth doctrine. In the Supreme Court cases of Faragher v. City of Boca

Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington

Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998),

the Court held that

> where no adverse employment action is taken, there may
> be an affirmative defense to liability. The defense
> comprises two necessary elements: (1) that the employer
> exercised reasonable care to prevent and correct promptly

> any sexual harassing behavior, and (2) that the plaintiff
> employee unreasonably failed to take advantage of any
> preventative or corrective opportunities provided by the
> employer or to avoid harm otherwise.

Turner v. Olympic Regional Development Authority, 89 F.Supp 2d 241
(N.D.N.Y.2000) (citing Faragher, 524 U.S. at 806; Ellerth, 524 U.S. at 763).

Title VII requires that

> [a]n individual must file a charge within the statutory time
> period and serve notice upon the person against whom the
> charge is made.  In a State that has an entity with the
> authority to grant or seek relief with respect to the alleged
> unlawful practice, an employee who initially files a
> grievance with that agency must file the charge with the
> [Equal Employment Opportunity Commission] within
> 300 days of the employment practice; in all other States,
> the charge must be filed within 180 days. A claim is time
> barred if it is not filed within these time limits.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).

"A discrete retaliatory or discriminatory act 'occurred' on the day that it

'happened.'  A party, therefore, must file a charge within either 180 or 300 days of

the date of the act or lose the ability to recover for it." Id.  However,

> [a] hostile work environment claim is composed of a
> series of separate acts that collectively constitute one
> "unlawful employment practice." 42 U.S.C. §
> 2000e-5(e)(1). The timely filing provision only requires
> that a Title VII plaintiff file a charge within a certain
> number of days after the unlawful practice happened. It
> does not matter, for purposes of the statute, that some of
> the component acts of the hostile work environment fall
> outside the statutory time period. Provided that an act
> contributing to the claim occurs within the filing period,

12

> the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

National R.R. Passenger Corp. v. Morgan, 536 U.S. at 117.

### 4.    New York State Human Rights Law

NYSHRL is codified at N.Y. Exec. Law § 290 et seq., and states in pertinent part that "[i]t shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296 (West 2009).

This court must "analyze [a plaintiff's] federal and state law claims together because the Second Circuit applies federal standards of proof to discrimination claims brought under NYHRL." Smith v. Niagara Frontier Transp. Authority, 2007 WL 1119797 at * 5 (W.D.N.Y.2007) (citing Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir.2003); Torres v. Pisano, 116 F.3d 625, 629 n. 1 (2d Cir.1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII.")). "The

13

standard governing sex discrimination claims is the same whether pursued under Title VII or the Human Rights Law." Prystajko v. Lowe's Home Centers, Inc., 2007 WL 781932 at *4 (W.D.N.Y.2007) (Telesca, J.); Perks v. Town of Huntington, 251 F.Supp.2d 1143, 1158 (E.D.N.Y.2003) ("In the determination of whether sexual harassment has occurred, claims brought under Title VII and the NYHRL can be evaluated identically").

## III.   DISCUSSION

As a threshold matter, in her opposition papers to the motions for summary judgment, plaintiff does not address the issues of discrimination on the basis of national origin or religion.  Accordingly, the court deems these issues abandoned. See Riley v. Town of Bethlehem, 44 F.Supp.2d 451, 466 (N.D.N.Y. 1999) (where certain claims were alleged in complaint but not raised in opposition papers, those claims were deemed to be abandoned).

In addition, Brownell moves this court for summary judgment on the grounds that plaintiff cannot maintain a Title VII claim against him individually as a matter of law.  The court concurs.  "[U]nder Title VII individual supervisors are not subject to liability." Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).  "Individual liability is sometimes possible, however, under New York's Human Rights Law." Id.  Accordingly, Brownell's motion for summary judgment is

granted as to any Title VII claims against him individually.

## A. Discrimination - Sexual harassment / Hostile Work Environment

Title VII recognizes two forms of sexual harassment: "direct discrimination (the so-called 'quid pro quo' variety) ... and 'hostile workplace environment' harassment." Leibovitz v. New York City Transit Authority, 252 F.3d 179, 188 (2d Cir.2001).  In the case at bar, plaintiff has alleged a hostile workplace environment. A hostile work environment claim requires plaintiff to demonstrate: "(1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of employment." Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir.1993).  A plaintiff must prove that the defendant's conduct was unwelcome. "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.' " Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'

15

Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret, 451 F.3d at 149 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.2000)).

In the case at bar, plaintiff alleges that, inter alia, Brownell told offensive racial jokes directed toward African Americans and Puerto Ricans.[4] She also alleges that Brownell made public comments that he wished plaintiff would wear her hair down, and private comments that plaintiff could get anything she wanted from Brownell if she would just wear her hair down. Doc. No. 1 at pp. 4-5. In her sworn deposition (Doc. No. 36), plaintiff alleges several incidents where Brownell's remarks and/or actions made her uncomfortable and upset.

In addition, plaintiff alleges that Brownell has taken affirmative steps to deny her overtime, and that she has been denied training opportunities that were and are extended to male officers of the department. Plaintiff alleges that Brownell has brought disciplinary charges against the plaintiff for conduct that is regularly engaged in by other male officers without disciplinary action. After filing the current action, she was forbidden desk duty and is only allowed to work the desk

---

[4]     Brownell admits to this and also voluntarily discloses in his deposition an additional racial/ethnic joke for which he received a strong rebuke via letter from plaintiff's husband. Doc. No. 39-11.

16

when Brownell is not working.  A co-worker who wrote a letter to the editor defending plaintiff after derogatory newspaper articles appeared was also denied desk duty except on days that Brownell was not working.

While the court finds that Brownell's comment about plaintiff's hair likely does not rise to the level of sexual harassment, nor is it likely that Brownell's inappropriate racial jokes and sexual comments would be found to be anything but boorish under the circumstances of plaintiff's employment with a police agency, the trier of fact might find that the cumulative effect of Brownell's comments could weigh toward a finding of hostile work environment, precluding summary judgment.  In addition, the court finds a genuine issue of material fact surrounding Brownell's disciplinary charges against plaintiff for driving the wrong way on a one-way street.  The court has before it certain male officers' sworn testimony that avers that they also drive the wrong way on certain one-way streets under similar circumstances on a regular basis.  The court also has testimony that plaintiff is the only officer who was made to sign a statement that she would not drive the wrong way on that specific street in the future.  Whether the disciplinary action of banning plaintiff from desk duty when Brownell is in the building shows hostile work environment is also a matter for the trier of fact.  There is sworn testimony from a male officer that Brownell has a reputation for being vindictive and retaliatory

(Doc. No 39-10).  Consequently, the trier of fact could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  Brownell's actions as set forth his sworn testimony, and his statements to the local media precludes this court from finding that reasonable minds could not differ as to the import of the evidence in this case.

Construing the materials before the court in plaintiff's favor, and against the moving party as it is required to do, the court finds that plaintiff has shown that genuine issues of material fact remain on the issue of sexual harassment via hostile work environment.  Plaintiff is a member of a protected group.  She alleges that Brownell's conduct is pervasive and creates an environment that she perceives to be hostile and/or abusive, and that her hostile work environment is based upon her gender.  Brownell denies these allegations, notwithstanding his deposition testimony that serves to affirm plaintiff's version of events.  Accordingly, the court finds a genuine issue of material facts on the hostile work environment claim, and defendants' motion for summary judgment on this issue will be denied.

## B. Retaliation

Plaintiff claims that defendants retaliated against her, pursuant to state law and federal law, § 1983 and Title VII, for complaining about the alleged

18

discrimination.  Title VII provides that "[i]t shall be an unlawful employment

practice for an employer to discriminate against any of his employees ... because he

has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in

any manner in an investigation, proceeding, or hearing under this subchapter." 42

U.S.C. § 2000e-3(a) (West 2009).   Stated more succinctly, "Title VII forbids an

employer to retaliate against an employee for, inter alia, complaining of

employment discrimination prohibited by Title VII." Kessler v. Westchester County

Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir.2006).  "To state a claim for

retaliation in violation of Title VII, a plaintiff must plead facts that would tend to

show that: (1) she participated in a protected activity known to the defendant; (2)

the defendant took an employment action disadvantaging her; and (3) there exists a

causal connection between the protected activity and the adverse action." Patane v.

Clark, 508 F.3d at 115 (citing Feingold v. New York, 366 F.3d 138, 156 (2d

Cir.2004)).  "[T]he proper legal test in determining whether an employment action

is adverse in ... retaliation cases is whether the alleged acts 'would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional

rights.'" Dillon v. Morano, 497 F.3d 247, 254(2d Cir. 2007) (citing Zelnik v.

Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir.2006)).

In her case for retaliation, plaintiff asserts that she was initially given a counseling letter concerning her action of driving the wrong way on a one-way street, but was subjected to disciplinary action pursuant to § 75 of the Civil Service Law after she filed a complaint against Brownell with the City.   Plaintiff was represented by counsel, who advised plaintiff that she had no realistic choice but to accept the offered settlement of surrendering three weeks accrued vacation, as she was in danger of losing her employment. Doc. No. 42 at pp. 3-4.

Plaintiff also submits two newspaper articles relating Brownell's remarks to newspaper staff that were printed in the local newspapers, after he learned of plaintiff's lawsuit against him.  Brownell offers no evidence that he was misquoted when he stated in the January 25, 2007 article that, inter alia, plaintiff is a "chronic complainer and ... takes any orders from his office as a personal attack;" plaintiff has "been a malcontent at the sheriff's department, and she's been a malcontent here;" "she has no hesitation to lie to make her point;" and "[s]he's one of my worst employees and her brother is one of my best employees. They're two opposite ends of the spectrum."  Doc. No. 39-15, pp. 2-3.  Brownell also stated in another publication, dated January 26, 2007, that plaintiff is a "professional victim;" plaintiff "can't be trusted;" "has always demanded special treatment;" files frivolous complaints; "has been a problem since she walked in the door;" has

20

"pulled the same stunts while working at the Sheriff's Office;" plaintiff was "never qualified to be hired," plaintiff "blatantly lied" in respect to her departmental charges [mentioned above],  and that plaintiff has other disciplinary charges pending over "complaints from citizens." Id., pp. 4-5. In addition, the January 26, 2007 newspaper article referred to a companion case[5] currently pending against Brownell, stating that "[a]n independent investigation ... of Ottati's charges against Brownell the following October found no wrongdoing on the part of the chief," despite Brownell's own sworn testimony that he received counseling and notification of new employment policies from the City pursuant to the investigation. Doc. No. 39-12 at pp. 13-14; Doc. No 39-13 at pp. 37-38; Doc. No. 39-14 pp. 1-4.

The court finds that in addition to the aforementioned discipline resulting in plaintiff being banned from desk duty during weekdays, and, in the matter of driving the wrong way on a one-way street, conversion of her counseling letter to a disciplinary action after she filed a human rights complaint against Brownell (resulting in the loss of three week's vacation pay ),  Brownell's statements to the newspaper preclude summary judgment and present a triable issue on the matter of retaliation.

Plaintiff also alleges a First Amendment retaliation claim, pursuant to Section

---

[5]     See Ottati v. City of Amsterdam, et al, 6:06-CV-1370.

1983, for her participation in an investigation instigated by the City of Amsterdam

in light of at least one other complaint of gender discrimination against Brownell.

To establish a claim for a violation of her first Amendment rights, "[p]laintiff must

show: (1) her speech was constitutionally protected, as a result of which (2) she

suffered an adverse employment decision, and (3) a causal connection existed

between the speech and the adverse employment decision, so that it can be said that

her speech was the motivating factor in the determination." Gronowski v. Spencer,

424 F.3d 285, 292 (2d Cir. 2005).   "Plaintiff has the initial burden of showing that

an improper motive played a substantial part in the defendant's action. The burden

then shifts to defendant to show it would have taken exactly the same action absent

the improper motive." Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir.2003).

 A plaintiff must first demonstrate that he or she was engaged in protected

activity, and that the employer was aware of that activity. Protected participation or

opposition ("protected activity") under Title VII "refers to action taken to protest or

oppose statutorily prohibited discrimination." Wright v. Stern, 450 F.Supp.2d 335,

373 (S.D.N.Y.2006). "Informal as well as formal complaints constitute protected

activity." Id. (citing Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d

Cir.1990).  The second prong for a claim of First Amendment retaliation requires a

plaintiff to demonstrate that he or she was subject to an adverse employment action.

"[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2414-14, 165 L.Ed.2d 345 (2006). "Courts must examine closely each case to determine whether the challenged employment action reaches the level of 'adverse' ... An adverse action is not defined solely in terms of job termination or reduced wages and benefits ... Less flagrant reprisals by employers may indeed be adverse. [H]owever, not every unpleasant matter short of discharge or demotion creates a cause of action for retaliation." Wright, 450 F.Supp.2d at 373 (citing Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997)) (internal quotations omitted).

Finally, there must be a causal connection between the protected activity and the alleged retaliatory action. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment or fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d

Cir.2000).

Once again, the court finds that there is a genuine issue of material fact as to whether plaintiff's testimony to the attorney hired by the City, who was conducting an investigative inquiry into alleged wrongdoing by the police chief in a companion matter, is a protected activity constituting a matter of public concern, and whether an adverse employment action resulted from plaintiff's testimony (which she alleges was passed on to Brownell).  Finally, there remains a question of fact regarding a causal connection between the protected activity, if any, and the alleged retaliatory action to find retaliation under the First Amendment.  The trier of fact could conceivably find that reasonable worker might be hesitant in making or supporting a charge of discrimination under the facts of this case.   Accordingly, the court is precluded from dismissing the action on this issue.

### C.    Qualified Immunity

Brownell requests qualified immunity for his actions, which are alleged to include discriminatory remarks and discipline, and retaliation for the plaintiff's subsequent complaint regarding his behavior.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  The seminal law on this issue is Pearson v.
Callahan, --- S.Ct. ----, 2009 WL 128768 (U.S. 2009).  Pearson is a decision handed
down by the Supreme Court on January 21, 2009, which effectively overruled
Saucier v. Katz, 533 U.S. 194, 200 (2001).  Courts relied on Saucier to set forth the
procedure that a court must follow in determining if a defendant is immune from
suit pursuant to the doctrine  of qualified immunity.   Saucier stood for the premise
that "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see
Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a
violation of a constitutional right. Second, if the plaintiff has satisfied this first step,
the court must decide whether the right at issue was 'clearly established' at the time
of defendant's alleged misconduct. Qualified immunity is applicable unless the
official's conduct violated a clearly established constitutional right." Pearson, 2009
WL 128768 at *6.  In reconsidering Saucier, the Pearson  Court found that while
the Saucier protocol is often beneficial, it is no longer considered mandatory in all
cases.  In explaining its decision, the Court wrote that "[i]t is often difficult to
decide whether a right is clearly established without deciding precisely what the
constitutional right happens to be ...  [T]he rigid Saucier procedure ... sometimes
results in a substantial expenditure of scarce judicial resources on difficult questions
that have no effect on the outcome of the case." Id. at * 10.  In effect, Pearson gives

courts additional discretion in deciding the issue of qualified immunity without a lengthy analysis of whether there was in fact a constitutional violation.  Here, the court analyzed the reasonableness of Brownell's actions, based on the materials before it, in determining whether qualified immunity should be granted.  The court finds that Brownell is not entitled to qualified immunity.

Although Brownell asserts in his reply that plaintiff failed to present any argument in opposition to Brownell's qualified immunity argument, the court finds Brownell's argument unavailing.  The issue of qualified immunity is decided as a matter of law, and plaintiff's failure to argue against qualified immunity is of no consequence.  Again, qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, rather than a mere defense to liability.  The court finds that as a matter of law, qualified immunity does not lie with the facts of this case, and Brownell will not be afforded protection from standing trial.

### D.    Use of City's Complaint Procedure

In plaintiff's sworn testimony, she mentions confusion over the complaint procedure that she was supposed to use, because certain police department regulations conflicted with the procedures in the City's employee handbook, and the police department mandated that its regulations were to be followed.  Plaintiff asserts that she received a memo from her supervisor to that effect. Doc. No. 39-7,

p. 20.  Accordingly, the court finds that this constitutes a factual issue and the court is precluded from dismissing this issue as a matter of law.

In regard to the City's argument that plaintiff fails to make a prima facie case for retaliation, fails to state a constitutional violations claim upon which relief can be granted, and that her Title VII and NYSHRL claims are time barred by the applicable statute of limitations, the court has found, supra, that there remains a genuine issue of material fact surrounding these issues.  Plaintiff has alleged discriminatory incidents that fall within the time frame for reporting, and pursuant to National R.R. Passenger Corp., the trier of fact will determine whether the entire time period of the hostile environment may be considered by a court for the purposes of determining liability

A municipal entity, such as the City here, may not liable pursuant to § 1983 under the theory of respondeat superior, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity. See Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir.1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. County of

<u>Oneida, N.Y.</u>, 375 F.3d 206, 226 (2d Cir. 2004) ( <u>quoting</u> <u>Kern v. City of</u>

<u>Rochester</u>, 93 F.3d 38, 44 (2d Cir.1996)) (internal quotation marks omitted).  Once

again, this is an issue for the trier of fact.

**IV.    Conclusion**

Based on the foregoing, defendants' motions for summary judgment are

GRANTED on the issues of discrimination based on national origin and religion,

pursuant to 42 U.S.C. § 1983, by reason of abandonment.

Defendant Brownell's motion for summary judgment is GRANTED on the

issues of Title VII liability against him in his individual capacity.  Brownell's

motion for summary judgment on the remainder of issues is DENIED.  Defendant

City of Amsterdam's motion for summary judgment on the remainder of issues is

also DENIED.

SO ORDERED.

January 29, 2009

_____

Neal P. McCurn
Senior  U.S. District Judge