**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

===============================================================

ANGELITA KERCADO-CLYMER,
               Plaintiff,

v.                                      6:07-CV-00086 (NPM/DEP)

CITY OF AMSTERDAM,
THOMAS V.N. BROWNELL,
As Chief of Police of the City of
Amsterdam, and in his Individual
Capacity,
               Defendants.

===============================================================

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF JAMES B. TUTTLE<br>Attorney for Plaintiff<br>10 Century Hill Drive, Suite 4<br>Latham, New York  12110 | JAMES B. TUTTLE, ESQ. |
| GIRVIN & FERLAZZO, PC<br>Attorneys for Defendant<br>City of Amsterdam<br>20 Corporate Woods Boulevard<br>Albany, NY  12211-2350 | JACINDA HALL CONBOY, ESQ.<br>SCOTT P. QUESNEL, ESQ. |
| LEMIRE JOHNSON, LLC<br>Attorneys for Defendant<br>City of Amsterdam<br>2534 Route 9, P.O. Box 2485<br>Malta, NY   12020 | GREGG T. JOHNSON, ESQ.<br>FRANCINE R. VERO, ESQ. |
| PENNOCK, BREEDLOVE & NOLL, LLP<br>Attorneys for Defendant<br>Thomas V.N. Brownell<br>1407 Route 9, Nine North<br>Clifton Park, NY  12065 | JOHN H. PENNOCK, ESQ.<br>TRACY M. LAROCQUE, ESQ. |

**NEAL P. McCURN, Senior U.S. District Court Judge**

## MEMORANDUM - DECISION AND ORDER

This is an employment discrimination action filed by plaintiff Angelita Kercado-Clymer ("plaintiff"), a police officer with the City of Amsterdam Police Department, against the City of Amsterdam ("City") and Police Chief Thomas V.N. Brownell ("Brownell") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff also seeks relief and/or damages from both defendants for violation of her right to, inter alia, Equal Protection and Due Process under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 ("§ 1983") and § 1988. Plaintiff seeks state relief under the New York State Human Rights Law ("NYHRL"), codified at NY Exec. Law § 290 et seq.

On January 30, 2009, this court issued a Memorandum - Decision and Order ("MDO") (Doc. No. 53) in this action pursuant to individual motions for summary judgment filed by each defendant. Currently before the court is a motion for reconsideration (Doc. No. 54) filed by the City, pursuant to Fed.R.Civ.P. Rule 60.[1] For the reasons set forth below, the court grants the City's motion for

---

[1] Brownell appealed "from every part" of this court's MDO to the Second Circuit Court of Appeals. Doc. No. 56.

reconsideration, but adheres to its earlier decision.

**I.    ISSUES**

The City raises three issues as the basis for its motion.  First, the City argues that the court erred as a matter of law with respect to the second element of the Faragher/Ellerth[2] defense.  Second, the City states that the court failed to address the legal grounds compelling the dismissal of the plaintiff's § 1983 claims.  Specifically, the City argues that the court failed to address the Sea Clammers Doctrine,[3] and that as a matter of law, plaintiff failed to present evidence of a Monell claim against the City.  Finally, the City argues that even if plaintiff's Title VII claim was not precluded under Faragher/Ellerth, such a claim against the City must nonetheless be dismissed as a matter of law pursuant to the continuing violation exception to the Title VII limitations period.  Each point will be discussed in detail below.

---

[2] This employer liability doctrine is taken from the seminal Supreme Court cases of Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

[3] See Middlesex County Sewerage Authority v. National Sea Clammers Assn., 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (When the remedial devices provided in a particular federal statute are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.  The existence of these express remedies under that particular statute demonstrates that Congress intended to supplant any remedy that otherwise would be available under § 1983).

**II.   DISCUSSION**

    A.   Motion for Reconsideration Standard

The decision to grant or deny a motion for reconsideration falls squarely within the discretion of the district court. See Devlin v. Transportation Communications International Union, 175 F.3d 121, 132 (2d Cir.1999). "A motion for reconsideration may be granted upon one of three possible grounds: (1) an intervening change in law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice." Shannon v. Verizon New York, Inc., 519 F.Supp.2d 304, 307 (N.D.N.Y.2007) ( citing Doe v. New York City Dept. of Social Servs., 709 F.2d 782, 789 (2d Cir.1983). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir.1995).

Here, the City is requesting reconsideration based on the need to correct a clear error of law or to prevent manifest injustice. Doc. No. 54-3 at p. 5. First, the City argues that as a matter of law, plaintiff's professed confusion over the City's anti-harassment policy is insufficient to defeat the City's affirmative defense under the Supreme Court's decisions in Faragher/Ellerth. As the court stated in its MDO, the seminal case law on liability of the employer is the so-called

Faragher/Ellerth doctrine.  In the Supreme Court cases of Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Court held that

> where no adverse employment action is taken, there may be an affirmative defense to liability. The defense comprises two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexual harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

Turner v. Olympic Regional Development Authority, 89 F.Supp 2d 241 (N.D.N.Y. 2000) (citing Faragher, 524 U.S. at 806; Ellerth, 524 U.S. at 763).

In its MDO, the court found a genuine issue of material fact on the issue of adverse employment action.  Assuming, arguendo, that no adverse employment action was taken, the Faragher/Ellerth doctrine would apply.  The City argues that it has satisfied its burden under the second prong of the Faragher/Ellerth doctrine, "as it is undisputed that the Plaintiff did not make use of the City's Anti-Harassment policy.  Plaintiff never filed a harassment complaint pursuant to the City's policy, even though Plaintiff was provided with ample opportunities to do so." Doc. 54-3 at p. 9.  The City states that plaintiff's stated reason for not making a complaint pursuant to the City's anti-harassment policy, that "she was confused

5

about whether the City's Anti-Harassment policy was exclusive," is inadequate to satisfy her burden of production. Id. The court disagrees.

In the court's MDO, it stated the following in regard to this issue:

> In plaintiff's sworn testimony, she mentions confusion over the complaint procedure that she was supposed to use, because certain police department regulations conflicted with the procedures in the City's employee handbook, and the police department mandated that its regulations were to be followed. Plaintiff asserts that she received a memo from her supervisor to that effect. Doc. No. 39-7, p. 20. Accordingly, the court finds that this constitutes a factual issue and the court is precluded from dismissing this issue as a matter of law.

Doc. No. 53, pp. 26-27.

Plaintiff also states a belief that the police department's rules and regulations contained regulations that conflicted with the City's sexual harassment policy. Doc. No. 39-7 at p.15. Plaintiff also stated that she "remembered getting a memo from the Chief telling us, ordering us not to talk to council members or anyone else about things that went on at the police station, not to make any complaints." Id. at pp. 15-16. Plaintiff was asked during her deposition if anyone from the City ever told her that the anti-harassment policy contained in the 2002 employee handbook she purportedly received and read didn't apply to her as it

applied to the plaintiff in a companion case, Karen Ottati.[4] Plaintiff replied that she had received an email from one of the officers in the police department, addressing the confusion about the City's anti-harassment policy conflicting with the police officers' contract. Id. at p. 17.  Plaintiff stated that the latest department rules and regulations advised a complainant to go to his or her immediate supervisor.  She spoke to her union president about the sexual harassment, and she spoke with an attorney at the law firm that represents the police union, who told plaintiff that when another incident occurred, because of where plaintiff worked, and the chain of command that was in place, "we would go through the route of Human Rights." Id. at p. 19.  In addition, plaintiff testified that in October of 2005, when summoned to the office of the City's corporation counsel, Robert Going, to discuss the City's investigation regarding sexual harassment in the police department, Going told plaintiff that if any retaliation occurred because plaintiff cooperated with and testified pursuant to the investigation, plaintiff could feel free to use whatever methods necessary to get such retaliation to his and to the mayor's attention.  Doc. No. 39-6 at p. 43.  In that meeting, Going also related the details of a prior harassment issue he had dealt.  Going's story was relayed in a laughing

---

[4]   See Ottati v. City of Amsterdam, et al., Civ. Action No. 6:06-cv-01370 NPM/DEP, filed November 13, 2006.

manner, and the plaintiff found it to be both sexually and racially offensive. Plaintiff also notes that prior to being the City's corporation counsel, Going was removed from his position as judge because of sexual harassment. Id. at p. 56. See also Ottati v. City of Amsterdam, 2008 WL 1744557 at * 2, n.6 (N.D.N.Y. 2008). Consequently, plaintiff observed that she had no intention of sharing the details of Brownell's alleged sexual harassment with corporation counsel Going. Doc. No. 39-6 at pp. 55-56.

The court finds ample evidence to support a finding that there is a genuine issue of material fact regarding the City's position that plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise" pursuant to the second prong of the Faragher/Ellerth doctrine. Accordingly, the court adheres to its original decision on this issue.

The City next contends that plaintiff's § 1983 claims must be dismissed under the Sea Clammers doctrine, set forth supra at footnote 3, or alternatively, dismissed under Monell.[5] The City argues that in reaching its decision on the

---

[5] See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691-95, (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory ... it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983").

summary judgment motions, the court failed to address the Sea Clammers doctrine, which compels the dismissal of plaintiff's "redundant gender discrimination and retaliation claims." Doc. No. 54-3 at p. 11. The City asserts that "[p]laintiff's § 1983 Equal Protection claim and her retaliation claim are based on the very same facts underlying her Title VII claims (e.g. sexual harassment and retaliation for reports to the City's investigator in the sexual harassment matter). Accordingly, under the Sea Clammers doctrine, [p]laintiff's § 1983 claim against the City must be dismissed." Id. at p. 11.

Prior to reaching its decision (Doc. No. 53) on the summary judgment motions in this case, the court extensively researched how the Sea Clammers doctrine was applied in the Second Circuit, and ultimately found the City's argument unavailing. The doctrine is largely applied in an education context in this circuit, and it is well-settled law that "Title IX contains a sufficiently comprehensive enforcement scheme so as to foreclose the use of § 1983 to implement its provision." Bruneau v. South Kortright Central School District. 163 F.3d 749, 756 (2d Cir. 1998). The City now submits the Supreme Court's recent decision in Fitzgerald v. Barnstable School Committee, 129 S.Ct. 788 (2009), also a Title IX case, in support of its argument that plaintiff's § 1983 case against the city must be dismissed.

As stated above, Plaintiff brought the current action pursuant to Title VII, § 1983, and the NYSHRL.  In <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 48 (1974), the Supreme Court held that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.  The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." <u>Id.</u>  As this court stated in its MDO, Title VII states in pertinent part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e-2(a)(1) (West 2009).

This court first addressed this issue in <u>Doolittle v. Ruffo</u>, 1996 WL 159850 at * 41 (N.D.N.Y. 1996) (McCurn, J.), citing <u>Carrero v. New York City Housing Authority</u>, 890 F.2d 569 (2d Cir. 1989) as the "first case in the circuit to hold that a hostile work environment/sexual harassment claim could form the basis for both a Title VII cause of action and an equal protection claim under § 1983.  The <u>Carrero</u> court held that "Title VII does not prohibit employment discrimination claims brought under § 1983 ... [and that] [i]t has been assumed in this Circuit that

10

a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII." Id. at 576.  The Second Circuit found that "[w]hether Title VII provides the exclusive remedy for employment discrimination against state and local government employees, barring concurrent claims under § 1983, is an unsettled question." Id. at 575.  More recent case law seems to have resolved that uncertainty.  In Demoret v. Zegarelli, 451 F.3d 140 (2d Cir. 2006), employees sued a New York village and its mayor under § 1983, Title VII, and NYSHRL , claiming hostile work environment, adverse employment actions based on gender, and retaliation for complaining about discrimination.  In Demoret, as in the case at bar, plaintiffs sued pursuant to § 1983 alleging constitutional violations.  The Second Circuit stated that "[w]e have held that sex-based discrimination may be actionable under § 1983 as a violation of equal protection.  Accordingly, § 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender. Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." Id. at 149 (internal citations omitted).  The court is not persuaded by

the City's argument that the Sea Clammers doctrine requires that the court dismiss plaintiff's § 1983 claims. The court adheres to its original decision.

In regard to plaintiff's Monell claim, the City argues that the court failed to analyze whether there was any basis under Monell for such a claim against the City. In its MDO, the court held that "[a] municipal entity, such as the City here, may not liable pursuant to § 1983 under the theory of respondeat superior, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity. See Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir.1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) ( quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996)) (internal quotation marks omitted). Once again, this is an issue for the trier of fact." Doc. No. 53 at pp. 27-28. In its MDO, the court set forth undisputed factual information regarding the City's internal investigation being conducted into Brownell's actions in the Ottati matter, as well as evidence that plaintiff's first complaint to the City was turned over to Brownell, the alleged harasser, for

investigation. The second complaint remained unanswered. As of the date her case was filed, plaintiff had received no response from the City. Doc. No. 53 at p. 6. In addition, despite the City being in possession of the results of its internal investigation which contained numerous complaints against Brownell for sexual harassment, said complaints made by the plaintiff and by other city employees, the record reveals no efforts by the City to effectively intervene in the matter. The court finds no merit to the City's argument that the court failed to analyze whether there was any basis under Monell for a §1983 claim against the city, and adheres to its original decision on this issue.

Finally, the City argues that the continuing violation doctrine does not extend plaintiff's statute of limitations period, and her timely Title VII allegations against the City must be dismissed under the objective prong of the hostile work environment paradigm. The City argues, inter alia, that the allegations presented by the plaintiff constitute the type of discrete discriminatory acts that do not constitute a continuing violation. The City then sets forth four alleged incidents taken from plaintiff's complaint.

The City argues that the court erred in deferring the matter to a prospective jury, and that "[a]s a practical matter, this ruling sets up an untenable prospect where the jury would hear [p]laintiff's parade of horribles spanning more than a

decade, and at the end of the trial be asked to determine which incidents are part of a continuing pattern and thus properly considered as part of [p]laintiff's claim." Doc. No. 54-3 at p. 14. The Second Circuit has addressed this issue at length. "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Patterson, 375 F.3d at 220. In Petrosine v. Bell Atlantic, the court of appeals stated that "[w]hen, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct. For example, in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, **a court and jury** may consider "the entire time period of the hostile environment" in determining liability." Petrosine v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117(2002)) (emphasis added).

The court reminds the City that it issued its MDO on motions for summary

judgment. A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2009). The court spent considerable time and effort reviewing every document submitted for consideration, including lengthy deposition testimony from the plaintiff, from defendant Brownell, and from other City employees. In those documents, the court did not find allegations of isolated actions (only a "handful" of interactions over 14 years, as the City claims) (Doc. No. 66 p. 13) but testimony depicting a pattern of what could be construed by the trier of fact as nearly constant harassment against plaintiff and other City employees. Consequently, the court found a genuine issue of material fact surrounding the issue of plaintiff's allegations pursuant to the continuing violation exception to the Title VII limitations period. Accordingly, the court adheres to its original decision on this issue.

### III. Conclusion

For the reasons set forth <u>supra</u>, the court hereby GRANTS the City's motion for reconsideration (Doc. No. 54). Upon reconsideration, the court adheres to its earlier decision. Pending a decision in Brownell's appeal to the Second Circuit Court of Appeals (Doc. No. 56), the court will set this action down for trial at its

earliest convenience.

    SO ORDERED.

April 10, 2009                                      */s/ Neal P. McCurn*
                                                Neal P. McCurn
                                                Senior U.S. District Judge